**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, )<br>)<br>PLAINTIFF, )<br>)<br>v. )<br>)<br>KASCO, LLC )<br>)<br>DEFENDANT. ) | No. 4:16-cv-1333 |

**COMPLAINT**

NATURE OF THE ACTION

1. This is a three count action under Title VII of the Civil Rights Act of 1964 (Title VII), 78 Stat. 253, as amended, 42 U.S.C. § 2000e et seq. and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct unlawful employment practices and to provide appropriate relief to Ms. Latifa Sidiqi. As alleged with greater particularity below, KASCO, LLC, intentionally violated Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a)(1) by terminating Sidiqi because of her religion (Muslim) and national origin (Afghani), as well as Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), by retaliating against her by terminating her employment because she opposed prohibited discrimination by KASCO.

JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.

3. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

1

4. Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3), because the illegal employment practice at issue is alleged to have been committed in Missouri.

5. Venue is proper in the Eastern Division pursuant to L.R. 2.07(A)(1) and L.R. 2.07(B)(4).

## PARTIES

6. Plaintiff Equal Employment Opportunity Commission is the federal agency charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action pursuant to 42 U.S.C. § 2000e-5(f)(1) and (3).

7. Defendant KASCO, LLC, was incorporated in Delaware in 1986, is headquartered in St. Louis, and is also registered (as a foreign corporation) in Missouri. KASCO has at all relevant times engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 2000e(h) (incorporating by reference Section 2(c) of the Labor Management Reporting and Disclosure Act of 1959, as amended, 29 U.S.C. 401 *et seq.*), has employed well over fifteen people for at least twenty calendar weeks in the current or preceding year, and is therefore an "employer" under 42 U.S.C. § 2000e(b).

## ADMINISTRATIVE PROCEDURES

8. On August 6, 2013, Sidiqi filed a charge of discrimination with the Commission alleging KASCO violated Title VII.

9. On August 6, 2013, pursuant to 29 C.F.R. § 1601.14, the Commission mailed KASCO a timely notice of Sidiqi's charge as required by 42 U.S.C. § 2000e-5(b).

10. On August 28, 2015, following the Commission's investigation, the Commission issued KASCO a Letter of Determination, pursuant to 42 U.S.C. § 2000e-5(b) and 29 C.F.R. § 1601.21, finding reasonable cause to believe that KASCO violated Title VII.

11. Accompanying the Letter of Determination was an invitation to KASCO to join with the Commission in informal methods of conciliation, pursuant to 42 U.S.C. § 2000e-5(b) and 29 C.F.R. § 1601.24, to endeavor to eliminate the discriminatory practices and provide appropriate relief.

12. The Commission engaged in communications with KASCO to endeavor to eliminate the discriminatory practices and provide appropriate relief.

13. The Commission was unable to secure from KASCO a conciliation agreement acceptable to the Commission.

14. On October 30, 2015, the Commission issued KASCO a Conciliation Failure Notice, pursuant to 29 C.F.R. § 1601.25, stating "efforts to eliminate the alleged discriminatory practices and to obtain voluntary compliance as required by Title VII… have been unsuccessful."

15. All conditions precedent to the institution of this lawsuit have been fulfilled.

STATEMENT OF FACTS

16. Latifa Sidiqi is an American of Afghani descent and an adherent of Islam.

17. Sidiqi was an "employee" of KASCO, within the meaning of Section 701 of Title VII, 42 U.S.C. § 2000e(f), for over five years, from January 2008 until July 2013. At the time of her termination she was one of six Buyers for KASCO.

18. Starting in 2012, after working for KASCO for four years, Sidiqi began seriously practicing her religion, including wearing a hijab and fasting during Ramadan.

19. During Sidiqi's employment, Beth Dalluge, who became her supervisor starting in 2009 or 2010, and others made harassing comments toward or about Sidiqi.

20. For example, Dalluge, *inter alia*, made negative comments about Sidiqi's and other employees' accents and ability to speak English well, and a former coworker heard Dalluge make a snide comment out of Sidiqi's earshot about Sidiqi fasting during Ramadan when a group of employees was going to lunch. Dalluge also told Sidiqi "I don't know how you people live over there," referring to Afghanistan.

21. In addition, KASCO's Vice President and Chief Financial Officer, Thomas Orelup, jumped and pretended to be afraid of Sidiqi when she started wearing a hijab in 2012, inquired as to why she had to wear the hijab at his business, and stated that a package Sidiqi was sending had to be checked "to make sure it does not blow up."

22. On or about August 2, 2012, during the first Ramadan following Sidiqi's more strict practice of her religion, Dalluge gave Sidiqi her first written warning in almost five years of employment. Specifically, Dalluge claimed Sidiqi was having problems cooperating with coworkers and that she failed to notify others about a problem with a software system Buyers use so it could be corrected.

23. On August 3, 2012, Sidiqi submitted a written rebuttal to Human Resources denying both claims. Sidiqi also submitted a separate written complaint, again to Human Resources, alleging Dalluge was treating her unfairly due to her religion and national origin.

24. Sidiqi subsequently met with Human Resources Director, David Neu, who said he would remove the written warning from Sidiqi's file and would speak with Dalluge regarding Sidiqi's concerns.

25. There is no evidence Neu spoke with Dalluge as he promised Sidiqi he would.

26. In November 2012, Sidiqi received a performance review with an overall rating of "acceptable, some room for improvement." Of note, it states Sidiqi is "fully reliable" with respect to her attendance and punctuality.

27. From May 21, 2013, to July 9, 2013, Sidiqi took Family Medical Leave Act (FMLA) leave to care for her ill father in Afghanistan.

28. On July 10, 2013, her first day back to work with KASCO after her FMLA leave, and the second day of Ramadan, Dalluge again disciplined Sidiqi, this time for not printing and filing purchase orders and asking a coworker to perform a Sidiqi-assigned task before she departed on FMLA leave. Like Ramadan the previous year, Sidiqi was wearing her hijab and fasting.

29. In response to the discipline, Sidiqi again submitted a written rebuttal to Human Resources denying Dalluge's claims, noted the timing (i.e., "[t]his year, as I wear my hijab again") and complained that the discipline "has everything to do with me coming from a Muslim background."

30. Within weeks of this July 10, 2013, complaint to KASCO, Sidiqi was terminated, on July 30, 2013.

31. The reason given for termination, allegedly falsifying time records, was pretext for discrimination against Sidiqi because of her religion (Muslim) and national origin (Afghani) in violation of Title VII, 42 U.S.C. § 2000e-2(a) and discriminatory retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a).

32. Specifically, on or about July 29, 2013, Dalluge claimed she requested another employee give Sidiqi a note when she arrived at work. When the coworker mentioned Sidiqi did not arrive always arrive at 7 a.m., Dalluge claims she decided to conducted a review of Ms. Sidiqi's time cards versus her swipe-card building access times and discovered six time card violations between July 16-25, 2013 (dates that fell within the Muslim Holy Month of Ramadan in 2013 - July 8 - August 7, 2013).

33. KASCO stated that these "time card violations," which reflected "employee theft of time," were the reason for Sidiqi's termination.

34. Despite Sidiqi's protestations that she always worked a full workweek, that KASCO's practice was to allow employee flex time, that no Buyer had been punished for having swipe times not matching his or her time card entries so long as the employees worked a full workweek, that her fasting during Ramadan was the reason for the so-called "theft of time" between July 16-25, 2013, and that she was being discriminated and retaliated against, KASCO still terminated her.

35. In fact, as for employee card swiping, KASCO admitted during the Commission's investigation that employees only swipe when they enter the building. They do not swipe when they go to lunch, smoke, conduct business, go "outside to the mailbox in front of the building" (although they do swipe when they come back into the building after eating, smoking, getting the mail, etc.), nor do they swipe when they depart for the day.

36. KASCO also admitted during the Commission's investigation there are multiple reasons why an employee will have no swipe time for a particular workday. For example, they note that this happens when "an employee enters with another employee and does not swipe his or her card." Additionally, if the card reader does not read the card through a wallet or purse, employees "ring the bell and [are] let it." It can also happens when an employee "forgets his or [her] keycard at work or left it at work" or if the "keycard reader is not working."

37. For the same reasons that there might not be a swipe time record for an employee on a particular day, there could be an incorrect or misleading record regarding the start of an employee's workday. For example, one KASCO employee, L.L., had a single swipe entry time on May 10, 2013, at 12:13:59 p.m. This is despite her pay time card showing her start time for that day was 6:45 a.m. That L.L. had an unpaid lunch break time on her time card from 11:45 a.m. to 12:15 p.m., strongly suggests when she arrived at work that day (presumably on time at 6:45 a.m.) she did not swipe her card for one of the reasons KASCO suggests in ¶ 36. That sole recorded swipe time (presumably when she came back to work after lunch) does not prove a "time card violation" or "employee theft of time." In fact, the same thing can occur if an employee who does not swipe his or her card first thing in the morning, later departs and returns to work after smoking, getting the mail, or conducting business.

38. Given KASCO's swipe card practices, it has no way of knowing by a simple comparison of swipe times to pay records that an employee who appears to have swiped "late" on any given day is guilty of "theft of time."

39. Furthermore, a comparison of swipe times to pay records would not reveal if an employee with a twenty minute "late" swipe time which reflects an actual late arrival may have worked through a scheduled lunch (or took an abbreviated lunch) or worked twenty (or more) minutes at the end of the day or worked additional time on another workday.

40. Although Sidiqi admitted that she and others sometimes arrived at work later than the time cards reflected (something that happened more often during Ramadan for her), she credibly claims (and others support the claim) that KASCO aware of this and knew that she and others worked full workweeks.

41. In fact, during the Commission's investigation, KASCO produced arrival swipe-times and employee entered time card times which show two-thirds of the six Buyers were regularly swiping later than their time cards reported.[1]

42. Specifically, from March 1 to May 31, 2013 (during the three month period prior to Sidiqi's FMLA leave to Afghanistan), Sidiqi was "late" (comparing swipe-time and time card entries) fifteen times (15) for a total of 398 minutes. However, she was also "early" five (5) times for a total of almost 100 minutes; this is a net "late" time of 306 minutes.

43. During this same period, another Buyer, J.W. (white/American/non-Muslim), was late twenty-nine (29) times and never early. He had a net "late" time of 549 minutes. This is 243 minutes more than Sidiqi.

---

[1] Because KASCO claimed that Sidiqi's twelve minute tardiness on July 17, 2013, constituted a "time card violation," the analysis, *supra* ¶¶ 41-46, disregards any deviation (+/-) less than ten minutes for the six Buyers.

Additionally, as noted, *supra* ¶ 36-37, this analysis is only for dates in which there was a valid morning swipe recorded by KASCO.

Finally, again as noted *supra* at ¶ 37, the Commission cautions that the recorded swipe times do not necessarily reflect the employees' actual arrival time.

44. A third Buyer, M.S. (white/American/non-Muslim), was late six (6) times for a total of 231 minutes. She was also early once. Her net "late" time was 193 minutes.

45. A fourth Buyer, L.L. (white/American/non-Muslim), was late nine (9) times and never early, with a net "late" time of 134 minutes.

46. This data, showing four of six Buyers regularly having swipe times not matching time records, contradicts KASCO's assertion that it had no flex time at the time it terminated Sidiqi.

47. Most significantly, neither J.W., who had almost double the number of tardies of Sidiqi (29 versus 15), totaling 549 minutes (243 minutes more than Sidiqi), nor any of the other regularly "late" Buyers (M.S. or L.L.), were terminated; only Sidiqi was terminated -- within weeks of her complaining about discrimination.

## STATEMENT OF CLAIMS

### COUNT I
Title VII - Unlawful Termination (Religion)

48. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

49. KASCO unlawfully terminated Sidiqi because of her religion (Muslim) in violation of 42 U.S.C. § 2000e-2(a)(1).

50. As a direct and proximate result of KASCO's violation of 42 U.S.C. § 2000e-2(a)(1), Sidiqi suffered actual damage including but not limited to back pay, losses in compensation and benefits, humiliation, emotional distress, and loss of enjoyment of life.

51. KASCO's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard for Sidiqi's rights.

## COUNT II
### Title VII - Unlawful Termination (National Origin)

52. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

53. KASCO unlawfully terminated Sidiqi because of her national origin (Afghani) in violation of 42 U.S.C. § 2000e-2(a)(1).

54. As a direct and proximate result of KASCO's violation of 42 U.S.C. § 2000e-2(a)(1), Sidiqi suffered actual damage including but not limited to back pay, losses in compensation and benefits, humiliation, emotional distress, and loss of enjoyment of life.

55. KASCO's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard for Sidiqi's rights.

## COUNT III
### Title VII - Unlawful Termination (Retaliation)

56. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

57. KASCO unlawfully retaliated against Sidiqi because of her legally protected employment activities (i.e., complaining about her treatment by KASCO), in violation of 42 U.S.C. § 2000e-3(a).

58. As a direct and proximate result of KASCO's violation of 42 U.S.C. § 2000e-3(a), Sidiqi suffered actual damage including but not limited to back pay, losses in compensation and benefits, humiliation, emotional distress, and loss of enjoyment of life.

59. KASCO's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard for Sidiqi's rights.

PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Enter declaratory judgment on County I pursuant to 28 U.S.C. § 2201(a) that KASCO illegally discriminated against Sidiqi because of her religion (Muslim) in violation of 42 U.S.C. § 2000e-2(a)(1);

B. Enter declaratory judgment on Count II pursuant to 28 U.S.C. § 2201(a) that KASCO illegally discriminated against Sidiqi because of her national origin (Afghani) in violation of 42 U.S.C. § 2000e-2(a)(1);

C. Enter declaratory judgment on County III pursuant to 28 U.S.C. § 2201(a) that KASCO illegally retaliated against Sidiqi for her complaints of religious discrimination and national origin discrimination and in violation of 42 U.S.C. § 2000e-3(a);

D. Issue a permanent injunction prohibiting KASCO, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," in violation of 42 U.S.C. § 2000e-2(a)(1);

E. Issue a permanent injunction prohibiting KASCO, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them from "discriminat[ing] against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner

11

in an investigation, proceeding, or hearing under [Title VII]," in violation of 42 U.S.C. § 2000e-3(a);

F. Order KASCO to make Sidiqi whole by providing back pay and all appropriate compensatory damages, as well as prejudgment interest, for the acts complained of above;

G. Order KASCO to pay Sidiqi punitive damages for its conduct described above;

H. Grant such other and further relief as this Court deems necessary and proper in the public interest; and

I. Award the Commission its costs of this action.

Respectfully submitted,

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

/s/ Andrea G. Baran
ANDREA G. BARAN, #46520MO
Regional Attorney

/s/ C. Felix Miller
C. FELIX MILLER, #28309MO
Supervisory Trial Attorney

/s/ Grant R. Doty
Grant R. Doty, #60788MO
Trial Attorney
Equal Employment Opportunity Commission
St. Louis District Office
1222 Spruce St., Room 8.100
St. Louis, MO 63103
Phone: (314) 539-7918
Fax. (314) 539-7895
Email: grant.doty@eeoc.gov
ATTORNEYS FOR PLAINTIFF